## Smith et al. v. Kelly et al.

(Decided March 24, 1933.)

370

B. M. LEE for appellants.

ELMON MIDDLETON for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

For more than twenty years a graded common school has been organized and operated in and around Evarts, Ky., a town of either the fifth or sixth class, the record not disclosing. It has been and is known as "Evarts Graded School District," but it is sometimes referred to as "Graded School District No. 2 in Harlan County, Ky." Under the provisions of section 4465 of the 1930 Edition of Carroll's Kentucky Statutes, which was enacted in 1916, and amended in 1922 (see chapter 24, page 162, Session Acts of 1916, and chapter 8, page 35, Session Acts 1922), the trustees of such graded common school districts are to be elected on the first Saturday in May of each year between the hours of 8 o'clock a. m. and 4 o'clock p. m ; and section 4465a, enacted in 1926 (see chapter 79, page 273, of the Session Acts of that year), says in part: "All school elections in graded school districts shall be by secret ballot." Up to the time of the enactment of that section (4465a), voting at such elections was vive voce, which permitted a greatly increased number of votes to be cast within the time allotted by the statute for holding the election than when the votes are cast by ballot, as was prescribed by the 1926 act. By common consent and acquiescence, the voters within the district have heretofore submitted to the holding of all graded school elections at the graded school building therein, and which is in South Evarts voting precinct for the county of Harlan. But all the while

there were other county voting precincts entirely within the boundaries of the district, and perhaps portions of others, and at the time of the filing of this action the school district entirely embraced Kalday, South Evarts, and North Evarts county voting precincts, and about two-thirds of Griffesville county precinct; the voting place in the latter being within its two-thirds area embraced in the graded school district.

Plaintiffs as citizens, voters, and patrons within the graded school district, filed this action in the Harlan circuit court against its trustees, alleging the above facts and the additional ones, that there were between twelve and fifteen hundred legal voters in the district, and that there was insufficient time for all of them to vote by ballot at the approaching election for trustees in May of this year; and they prayed for mandatory orders requiring defendants, as such trustees, to make preparation for the holding of an election on that day in each of the county voting precincts within the school district at their respective voting places, in order to enable all of the voters within the district to participate in the election. They moved for an immediate hearing, and gave defendants more than ten days' notice of that application. The Harlan circuit court was then in session, and the cause was docketed, and on the day named in the notice a hearing was had on oral proof, which has been transcribed and duly certified with the record in this court. Upon the evidence the court sustained the prayer of the petition by issuing the orders therein prayed for, which involved elements of both a mandamus writ and a mandatory injunction; but we have concluded that substantial justice to all parties does not require of us a determination of the technical nature of the relief sought and granted. Upon the theory that it was purely injunctive, and that the order of the trial court was temporary, defendants moved a member of this court, under the provisions of section 297 of the Civil Code of Practice, to review and set aside the court's order but that motion was dismissed upon the determination of a majority of the members of this court that the order was a final one and appealable directly to this court. This appeal followed, and its disposition is now before us.

The answer consisted only of denials of the material facts, some of which were matters of record,

but the proof heard in the court below and brought here, clearly establishes the allegations of the petition, and which are not seriously contested by any testimony offered by defendants. Their first contention is a technical one, relating to the practice, and which is that the court prematurely heard the case and erroneously overruled their motion for a continuance until the next term of the court. They did not manifest in that motion any facts material to their defense that they were unable to produce at the hearing, nor did they urge any specific reason why they were unprepared to meet the meritorious issues. In fact, the record discloses that they could not present any stronger defense than they did at the hearing, by whatever length of postponement that the court might have granted, since the material facts were: (1) The number of voters in the school district; (2) the accessibility of the voters to their voting precinct, and (3) the ability of the voters to cast their ballots at one voting place within the time allotted for the election.

We said that such facts were the material ones upon the theory that they appear to have been so regarded by the respective parties; but it is doubtful if the trustees in school districts embracing more than one county voting precinct have the right to select one of them as the exclusive place for holding graded school district elections. Since, however, it is not necessary for the disposition of this case to determine that question, we will not attempt to do so.

Coming now to the consideration of the merits of the case, it should first be observed that section 6 of our Constitution, which is a part of our Bill of Rights, prescribes that "All elections shall be free and equal," and which has been construed to mean elections by the people. In the case of Hocker v. Pendleton, 100 Ky. 726, 39 S. W. 250, 19 Ky. Law Rep. 135, we expressly held that a failure of the officers whose duty it was to provide for elections to furnish necessary supplies for conducting them, so as to enable all electors entitled to vote to cast their ballots, was a violation of that section of our Bill of Rights. It necessarily follows that a failure of the Legislature to make provision whereby the voter may have an opportunity to exercise his right of suffrage, or an express provision whereby they would be deprived of such opportunity would like-

wise be a violation of the same constitutional provision. So that, if there existed any statute requiring elections in such school territories, wherein the number of voters were so great as to deprive a large portion of them of a reasonable opportunity to cast their ballots, the statute would be unconstitutional and void.

However, there is no such statutory requirement, and counsel for appellants, defendants below, does not contend, or in any manner argue in his brief, that there is any law requiring such school elections to be held at the district school house, or at only one place within the district, nor does he contend that it is within the power of the trustees to designate the place where the election shall be held in disregard of such designations by the proper authorities for the holding of county and state elections. Section 4465, supra of our Statutes, expressly prescribes that "All graded common school district elections shall be provided for by the trustees of the district in office at the time of the particular election," also that the board of trustees shall appoint the officers to hold all elections; and section 4465a, supra, after enacting that the voting shall be by ballot, continues by prescribing that the ballot shall be a separate one and deposited in a separate ballot box, exclusively provided for the school election. It prescribes how names of candidates may be printed on the ballot, and other particulars relating to the ballot. The section then says: "The general election law of the Commonwealth of Kentucky shall apply as to the duties of the county clerks and election officers in the matter of printing and distributing ballots, of issuing them to voters, or receiving and depositing them in the ballot boxes and of counting and preserving them, and in other particulars except as provided herein, provided that it shall be the duty of the sheriff of each county in which a graded school district is situated to provide for each such graded school district a separate box for the reception of ballots used in graded school elections."

It will be noted that the excerpt requires that "the general election law of the Commonwealth of Kentucky," shall apply to such school elections "except as provided herein." The provisions different from the general election law as therein provided are that the election shall be held on the first Saturday in May of

each year and between the hours of 8 a. m. and 4 p. m. and others found therein. The duty of providing the paraphernalia for holding the election except as to the printing of ballots and the furnishing of boxes, including the appointment of officers for holding the election, are placed upon the board of trustees of the district then in office. Our conclusion is that the Statutes require them to provide for such elections to be held in each voting precinct within the territory, and to appoint election officers at each of such voting places, and impose the duty on them to demand and furnish the necessary ballots, ballot boxes, voting booths, and other paraphernalia needed in conducting the election in each voting place within the territory, and which latter, we conclude, is required by the general election law of the commonwealth under which the election is to be conducted, except in the particulars mentioned in the school statute. However, none of those exceptions create the right and authority of the board of trustees to designate only one place in the graded school district for holding elections therein.

The facts in this case with reference to the territory covered by the school district, the number of voters therein, and the impossibility of all of them casting their ballots at one voting place, is undisputed in the evidence adduced, except that the two defendants who testified stated that it might be physically possible for all the voters in the district to cast their ballots at one place provided a sufficient number of clerks were appointed to serve at the election. That same contention could be made in a case where there was only one voting precinct in a county; but certainly no one would contend that such an additional force for holding the election, not provided for by statute, would answer the constitutional requirement that "all elections shall be free and equal." It is uncontradictedly established by the evidence that at no election held in the district since the enactment of the statute requiring the voting to be by ballot was there cast exceeding 50 per cent. of the legal voters entitled to participate in the election, and that at a number of them a large per cent. of the voters were unable to exercise their right of suffrage and cast their ballot because of insufficient time. The only reason urged against the relief sought by plaintiffs is the extra cost that it would entail to hold elections in the other three county voting pre-

cincts, which is a comparatively insignificant sum per annum, and which is no legal reason at all for denying the relief prayed for. The requirement in section 1443 of our Statutes that "each precinct shall contain, as nearly as practicable, three hundred voters, * * * but no precinct shall contain more than three hundred and fifty voters," is a legislative determination of the maximum number of voters to be allotted to a single voting precinct under our ballot system of voting, and is in substantiation of our conclusion that, where the number of voters is so great as to deprive a large per cent. of them of an opportunity to vote, the election is not free and equal as required by our constitutional provision.

We therefore conclude that the court properly rendered the judgment appealed from, and it is affirmed.

The whole court sitting.