## Asher et al. v. Arnett, Secretary of State.

Oct. 20, 1939.

348

E. C. O'Rear, Bailey P. Wootton, Ray C. Lewis and Napier & Napier for appellants.

Hubert Meredith, Attorney General, and A. E. Funk, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE TILFORD—Affirming.

This appeal is the result of the dismissal of petitions, original and intervening, filed by appellants in consolidated actions in the Franklin Circuit Court, seeking by mandamus and mandatory injunction to compel the Secretary of State to accept petitions signed by the requisite number of voters nominating appellants as independent candidates for the office of circuit judge, and to compel him to certify their names to the proper county officials in order that they might be printed on the official ballot for the 1939 general election. All of them were candidates for party nominations in the August 1939 primary, Asher, Ward and Napier for circuit judge of the Thirty-Third Judicial District, and Lewis for circuit judge of the Twenty-Seventh Judicial District. Ward was awarded the Republication nomination in a contest proceeding in the Perry Circuit Court, in which Asher, and J. A. Smith who received the largest number of votes, were disqualified for having violated the Corrupt Practice Act, Kentucky Statutes, Section 1565b-1 et seq. Lewis won the Democratic nomination in the Twenty-Seventh District but was defeated for the Republican nomination.

The Secretary of State declined to accept the nominating petitions referred to because they were tendered to him subsequent to the August primary instead of forty days prior thereto as required by Section 1456, Kentucky Statutes, as amended by the Act of 1938 (Ch. 60, Acts 1938). The Trial Court adjudged that the Secretary of State properly declined to accept the nominating petitions for the reason given, and, in the case of appellant, Asher, for the additional reason that the latter had been found guilty in the contest proceeding referred to of violating the Corrupt Practice Act.

Two grounds for reversal are relied upon by appellants: (1) That the Act in question does not apply to elections for the offices of circuit judge and appellate judge, because these offices by the provisions of the Non-Partisan Judiciary Act are excepted from the statutory provisions restricting nomination of an individual to one political party as well as from the statute prohibiting a candidate voted for and defeated in a primary from becoming a candidate by petition nomination for the same office in the ensuing general election, Kentucky Statutes, Sections 1550-5a, 1550-6. (2) That the

Act is in contravention of Section 6 of the Constitution of Kentucky, and hence is void.

The best, if not conclusive answer to the first of these contentions is that the Act of 1938 is unambiguous and does not except from its requirements candidates for other than municipal and school offices. (See Logsdon v. Howard, 280 Ky. 342, 133 S. W. (2d) 60. The 1938 act reads:

"Certificates of nomination filed with the Secretary of State shall be filed not more than seventy-five days and not less than forty-five days, before the day fixed by law, for the election of the person in nomination. *Petitions of nomination* filed with the Secretary of State shall be filed at least forty days before the first Saturday in August, preceding the day fixed by law, for the election of the person in nomination. Certificates of nomination herein directed to be filed with the Clerk of a County shall be filed not more than seventy-five and not less than forty-five days before election.

"*Petitions of nomination* herein directed to be filed with the Clerk of a County shall be filed at least thirty days before the first Saturday in August, preceding the day fixed by law, for the election of the person in nomination. Provided, that as to vacancies in offices to be filled at special elections held at times other than the regular November election, *petitions of nomination* filed with the Secretary of State or the Clerk of a County shall be filed not more than seventy-five days, nor less than forty-five days, before the day fixed for the election of the person in nomination." (Italics ours.)

It is ingeniously and eloquently argued by learned counsel for appellants that unless we read into this Act an exception which would exempt candidates for the judicial offices named from the necessity of filing nomination petitions prior to the August primary, the provisions of Kentucky Statute 1550-5a permitting such judicial candidates to have their names printed on the ballot as independent candidates in the general election, notwithstanding their defeat in the preceding primary, would be nullified, and that since the Act of 1938 does not expressly refer to candidates for judicial offices or repeal any of the exempting statutes previously enacted, the exception contended for must be read into the 1938

Act by implication. It is true that the 1938 Act, without the exception contended for, withdraws the privilege theretofore conferred upon candidates for circuit and appellate judgeships of awaiting the outcome of the primary before deciding to seek a place on the November election ballot as independent candidates; and while the withdrawal of this privilege may in some instances conflict with the strategy which the candidate desires to employ, this fact would not justify us in ignoring the plain language of the Act in its present form. The candidate for judicial office may still seek a party nomination or nominations, and, at the same time, whether successful or unsuccessful in the primary, have his name printed upon the November ballot as an independent, but in order to do so, he is required to file his nominating petition with the Secretary of State forty days before the date of the primary if the judgeship for which he is a candidate is to be filled by the voters of more than one county, or with the County Court Clerk thirty days before the primary if the office is one which is to be filled by the voters of a single county. Moreover, if the 1938 enactment was not intended to apply to candidates for the judicial offices named, there was little reason for its enactment, as only such candidates can in any event have their names printed on the November ballot following a defeat in the preceding primary, and hence, few, if any, candidates for non-judicial offices would seek nomination by petition. If a candidate for a non-judicial office in good faith preferred to run as an independent rather than seek a party nomination in a primary, he could not be prejudiced by the requirement that he announce his intentions by filing his petition of nomination at the same time that those desiring party nominations are required to announce their intention of participating in the primary.

It is contended by some of the appellants that they were misled by the opinion of this Court in the case of Revis v. Keen et al., 270 Ky. 327, 109 S. W. (2d) 797. This case contains a brief history of Section 1456, Kentucky Statutes, and was sufficient to have apprised appellants of the fact that this Court has uniformly regarded as conclusive the latest expression of the legislative will as to the time in which nominating petitions must be filed, whether that will was expressed in Section 1456 of the Statutes or in Section 1550-26, which is a part of the Primary Election Act. Undoubtedly some

confusion has heretofore existed on this subject which our opinions in the cases of Revis v. Keen, supra, and Bargo v. Tedders et al., 254 Ky. 341, 71 S. W. (2d) 660, attempted to clarify. This, the Act of 1938 accomplished in unmistakable terms, and irrespective of our views as to the propriety of its provisions, it is not within our power to limit its applicability.

The arguments advanced by appellants in support of their contention that Section 1456 of the Kentucky Statutes is repugnant to Section 6 of the Constitution of Kentucky may be summarized as follows: Party candidates nominated at the August primary are not required to file their certificates of nomination with the proper officials until forty-five days before the November election. Nominees of conventions held by parties not required to nominate by primary election may likewise file their certificates of nomination not less than forty-five days preceding the November election. Therefore, the requirement that those seeking to have their names placed on the November ballot by means of nominating petitions must file them forty or thirty days, as the case may be, before the August primary, is discriminatory, and hence, in violation of the constitutional provision that all elections must be free and equal. Emphasis is laid upon the right of the voters to select a candidate of their choosing rather than upon any right of the candidate to have his name printed on the ballot. But this argument overlooks the fact that the voter has the unrestricted right to vote for any eligible person he may choose to vote for by writing that person's name upon the ballot in the blank space provided for that purpose, and that a candidate is not ineligible to hold office by reason of the fact that his name is not printed upon the ballot; and this is true, even though the person voted for was a defeated candidate for a party nomination at the primary. The right to thus vote and be voted for is a constitutional right, but the privilege of having one's name printed on the ballot as a candidate for a particular office is necessarily limited to those who comply with the requirements prescribed by the Legislature, having for their object the ascertainment of the will of the electorate within the limits of practicability. Mullins v. Jackson, etc., 270 Ky. 149, 109 S. W. (2d) 387; Keen, etc. v. Revis, 270 Ky. 223, 109 S. W. (2d) 609; Winston et al. v. Moore et al., 244 Pa. 447, 91 A. 520, 522, L. R. A. 1915A, 1190, Ann. Cas. 1915C, 498.

Moreover, the requirement found in many State constitutions that all elections shall be free and equal has never been held to be a limitation upon the power of the Legislature to enact reasonable regulations for the naming of candidates by political parties and groups of voters. On the contrary, the very indefiniteness of the language employed in such constitutional provisions has been held to enjoin upon the Legislature the duty of enacting such regulations. As said in the case of Winston et al. v. Moore, supra:

"The mandate of the Constitution is that elections shall be free and equal, but how shall they be made free and equal? The Constitution is silent as to the method of securing the desired result. The declaration itself would be a vain thing in the absence of positive law to make the mandate effective. Who makes the law? The Legislature. As was well said by Justice Agnew in the case above cited [Patterson v. Barlow, 60 Pa. 54], the 'Constitution has given no rule and furnished no guide' to determine how the freedom and equality of elections shall be enforced. It enjoins the duty in the abstract, but leaves the means of accomplishment in the concrete to the Legislature. This necessarily gives the Legislature a wide field for the exercise of its discretion in the framing of acts to meet changed conditions and to provide new remedies for such abuses as may arise from time to time."

The objects of such constitutional provisions are thus stated in the same case:

"The declaration in the bill of rights that elections shall be free and equal means that the voter shall not be physically restrained in the exercise of his right of franchise by either civil or military authority, and that every voter shall have the same right as any other voter."

And again:

"In a general way it may be said that elections are free and equal within the meaning of the Constitution when they are public and open to all qualified electors alike; when every voter has the same right as any other voter; when each voter under the law has the right to cast his ballot and have it honestly counted; when the regulation of the right to exercise the franchise does not deny the franchise itself,

or make it so difficult as to amount to a denial; and when no constitutional right of the qualified elector is subverted or denied him.''

These interpretations of the meaning of the Constitutional provisions referred to have been generally accepted as correct by the text writers, as well as by the Courts of the several states, including this Court. Thus, in American Jurisprudence, Volume 18, pages 184, 185, under the title Elections:

''Legislative regulations as to the manner of voting and the restrictions placed thereon frequently must be tested by the broad rule laid down in many Constitutions to the effect that elections must be 'free and equal.' To be free means that the voter must be left in the untrammeled exercise, whether by civil or military authority of his right or privilege—that is, no impediment or restraint of any character shall be imposed upon him either directly or indirectly whereby he shall be hindered or prevented from participation at the polls. The word 'equal' comprehends the principle that every elector has the right to have his vote counted for all it is worth in proportion to the whole number of qualified electors desiring to exercise their privilege. The guaranty, therefore, means that every qualified voter may freely exercise the right to cast his vote without restraint or coercion of any kind and that his vote, when cast, shall have the same influence as that of any other voter. As otherwise expressed, an election is free and equal within the meaning of the Constitution when it is public and open to all qualified electors alike; when every voter has the same right as any other voter; when each voter under the law has the right to cast his ballot and have it honestly counted; when the regulation of the right to exercise the franchise does not deny the franchise itself or make it so difficult as to amount to a denial; and when no constitutional right of the qualified elector is subverted or denied him.''

And in the case of Robertson et al. v. Hopkins County et al., 247 Ky. 129, 56 S. W. (2d) 700, 701, this Court said:

''As said in Winston v. Moore, 244 Pa. 447, 91 A. 520, L. R. A. 1915A, 1190, Ann. Cas. 1915C, 498, such a declaration means 'that the voter shall not

be physically restrained in the exercise of his right of franchise, by either civil or military authority, and that every voter shall have the same right as any other voter.' Or, as expressed in Cooley's Constitutional Limitations (8th Ed.), vol. 2, p. 1370: 'All regulations of the election franchise, however, must be reasonable, uniform and impartial.' "

In harmony with the foregoing interpretations of the constitutional provision in question are the following cases decided by this court: Hocker et al. v. Pendleton, et al., 100 Ky. 726, 39 S. W. 250, 19 Ky. Law Rep. 135; Wallbrecht v. Ingram et al., 164 Ky. 463, 175 S. W. 1022; McKinney v. Barker, 180 Ky. 526, 203 S. W. 303, L. R. A. 1918E, 581; Perkins v. Lucas et al., 197 Ky. 1, 246 S. W. 150; Smith et al. v. Kelly et al., 248 Ky. 370, 58 S. W. (2d) 621.

As we have indicated before, neither Section 6 of the Constitution nor any other provision therein contained confers any right upon a candidate or a voter to have the candidate's name printed upon the official ballot. Legislation prescribing the means by which candidates may obtain that preferment, to that extent discriminatory legislation, must be enacted, for, as stated in the case of Winston v. Moore, supra—"If every one had the right to have his name printed on the official ballot, there would be no necessity or occasion to furnish such a ballot." As we have many times written, it is not our prerogative to pass upon the wisdom or. unwisdom of legislative enactments; and since we are of the opinion that the provisions of Section 1456 Kentucky Statutes are not in contravention of any provision of the Constitution, we have no alternative but to affirm the judgment appealed from, and it is so ordered.

Judgment affirmed.

Whole Court sitting.