James F. QUEENAN et al., Appellants,

v.

Solon F. RUSSELL et al., Appellees.

Court of Appeals of Kentucky.

Oct. 21, 1960.

Charles W. Dobbins, County Atty., James E. Thornberry, Asst. County Atty., Louisville, for appellants.

Raymond F. Bossmeyer, Louisville, for appellees.

John Breckinridge, Atty. Gen., Walter Herdman, Asst. Atty. Gen., amicus curiae.

CULLEN, Commissioner.

In a declaratory judgment action brought by two voters of Jefferson County (in a representative capacity) and the board of election commissioners of the county, against the county court clerk and the fiscal court, the circuit court held invalid a statute section, KRS 126.175 (1960, c. 146, sec. 3), created by a 1960 Act as a supplemental provision of the absent voting law. The court also construed two other sections of the absent voting law, KRS 126.150 and 126.230, which had been amended by the same 1960 Act.

The defendants have appealed and the Attorney General has filed a brief amicus curiae in which he suggests error in the judgment on two of the three points decided.

The section held invalid, KRS 126.175, is as follows:

"(1) On the fourteenth day prior to the election and beginning at 2:00 p. m., the county board of election commissioners and the county clerk, together with interested candidates or their representatives, and representatives of news media, shall examine all applications for an absent voter's ballot for the purpose of determining the voter's right to make application, as well as the validity of the form and

method of submitting the application itself. The county clerk shall have the registration records at the meeting. The county clerk shall read the name of each applicant aloud, and the applicant and his application may be challenged by anyone present. The board shall determine whether or not each application shall be accepted or rejected, and in so doing shall check the applicant's signature with his signature on the registration record and in the comparative signature books unless the applicant qualifies for absentee registration under this chapter. If the application is rejected it shall be so marked and the voter notified of this fact and the reasons therefor. No ballot shall be sent in response to a rejected application or prior to the examination provided for in this section.

"(2) The provisions of subsection (1) of this section shall not apply to applications submitted by members of the United States services.

"(3) The county clerk shall, however, retain the envelope or post card used by any member of the United States services for inspection and examination."

It will be noted that the statute prohibits the mailing of a ballot to any applicant prior to the examination provided for in the statute.

It was convincingly shown in the lower court that in Jefferson County and perhaps in other populous counties it would be physically impossibe, because of the large number of applications for absentee ballots customarily received, to complete the examination process required by the statute within the time allowed. It was further shown that in any county, even where the examination process could be completed within one day, some voters, particularly those in foreign countries or at distant places in the United States, might be effectively deprived of the opportunity to cast their ballots, because of the mailing time required in sending and receiving the ballots. Even though the number of voters in any one county so deprived of their votes might not be large, the total of all counties could be substantial.

It appears that the period that will be available under the statute for the sending and return of the ballots, after completion of the examination process, simply is not long enough to allow the casting of ballots by voters in distant places.

It was the opinion of the circuit court that because the statute would operate to deprive numbers of voters of the opportunity to cast their ballots the statute violated the requirement of Section 6 of the Kentucky Constitution for "free and equal" elections.

We have held that the legislature, under its authority to make reasonable regulations for the exercise of the voting franchise, cannot so frame the regulations as to deny the voting privilege, either directly or by rendering its exercise so difficult and inconvenient as to amount to a denial. Wilkinson v. Queen, Ky., 269 S.W. 2d 223. We also have said that an election is free and equal within the meaning of the Constitution only when it is public and open to all qualified electors alike; when every voter has the same right as any other voter; when each voter under the law has the right to cast his ballot and have it honestly counted; when the regulation of the right to exercise the franchise does not deny the franchise itself or make it so difficult as to amount to a denial; and when no constitutional right of the qualified elector is subverted or denied him. Asher v. Arnett, 280 Ky. 347, 132 S.W.2d 772.

In Smith v. Kelly, 248 Ky. 370, 58 S.W. 2d 621, it was held that the providing of only one voting place for the holding of a school election would violate Section 6 of the Constitution, where the number of voters was such that there would be insufficient time for all to vote at the one place.

In Perkins v. Lucas, 197 Ky. 1, 246 S.W. 150, a registration statute which allowed only one day each year for registering was held to violate Section 6 of the Constitution because it would operate to deprive many voters of the opportunity to register. The Court pointed out that although the Constitution does not require the legislature to provide for registration in all counties, any such requirement that the legislature does choose to enact must be reasonable, uniform and impartial, and must not operate directly or indirectly to deny or abridge the rights of citizens to vote, or unnecessarily impede those rights. The Court further said that if a voter is not given a reasonable opportunity to register he is denied his rights as a citizen and the election cannot be free and equal.

Although there is no unqualified constitutional right to vote by absentee ballot, it is our opinion that when the legislature chooses to grant the right by statute it must operate with equality among all the class to which it is granted. Because the statute here in question contains time limitations that effectively deprive some voters of the opportunity to vote, it does not operate with the required equality. We concur in the decision of the circuit court that the statute, KRS 126.175, is invalid.

The circuit court construed KRS 126.150 and 126.230 (as amended by 1960, c. 146) as prohibiting applications for absentee ballots, and the ballots themselves, from being delivered to the county court clerk by any method other than mail. Prior to the 1960 amendment, the provision of KRS 126.230 (relating to *ballots*) for mailing the ballots to the county court clerk was construed as being directory and not mandatory. Steel v. Meek, 312 Ky. 87, 226 S.W. 2d 542. The 1960 Act, in amending KRS 126.230, did not make any change in the language of that section with respect to mailing, but the Act in amending KRS 126.150 (relating to *applications*) inserted a requirement that the application be mailed, and the Act further added to the absent voting law a new section defining "mail," KRS 126.140(3).

The only reasonable conclusion that can be drawn from the 1960 amendments, taking them as a whole, is that the legislature intended that both the applications and the ballots should not be delivered to the clerk other than by mail. A reason for such a requirement would be to prevent undue activity on the part of clerks in the solicitation of absent voters. The effect of the 1960 amendments was to negate the holding in Steel v. Meek, 312 Ky. 87, 226 S.W.2d 542.

A further question exists with respect to the provision of KRS 126.150 that "Any absent voter may, at any time not less than fifteen days before an election, make an application in writing and by mail * * * for an absent voter's ballot." The circuit court construed this to mean that an application would be timely if postmarked before midnight on the fifteenth day before the election. The appellants and the Attorney General maintain that the application must actually be received by the clerk before midnight of the fifteenth day. They base this contention mainly on the fact that under KRS 126.175 the election commissioners must start their check of the ballots on the fourteenth day before the election.

We think that since the statute designates mailing as the method of "making" application, the application must be considered as having been made when properly mailed and that actual receipt by the clerk within the specified time is not required. The cases cited by the Attorney General all dealt with statutes requiring that a certain paper be *filed* within a certain time and containing no provision for mailing.

The judgment is affirmed.