**Ben MANN et al., Appellants,**

**v.**

**John Chris CORNETT et al., Appellees.**

Court of Appeals of Kentucky.

Oct. 17, 1969.

Marcus Mann, Salyersville, Bruce Stephens, Jr., Duff Arnett, Hazard, Ben Fowler, Frankfort, for appellants.

Cordell Martin, Earl Cornett, J. Robert Morgan, Hindman, for appellees.

John B. Breckinridge, Atty. Gen., Walter C. Herdman, Asst. Atty. Gen., Frankfort, amicus curiae.

DAVIS, Commissioner.

This appeal presents two basic issues: (1) whether the statutes providing for a separate judicial ballot are constitutional, and (2) whether the name of the appellant, Ben Mann, may properly be placed on the ballot for the general election to be held November 4, 1969, as a candidate for circuit judge in the 36th Judicial District composed of Knott and Magoffin Counties. By previous orders entered herein, the constitutionality of the judicial ballot law was upheld, and the right for the name of Ben Mann to appear on the November ballot was sustained. This opinion will outline the court's reasons for those rulings.

John Chris Cornett, incumbent circuit judge of the 36th Judicial District, successfully sought the Democratic nomination for judge of the 36th Judicial Dis-

trict as a candidate in the Democratic Primary held May 27, 1969. The appellant, Ben Mann, also sought the Democratic nomination for that office in the same primary but was defeated by Judge Cornett. Neither Cornett nor Mann entered the Republican Primary.

On April 2, 1969, there was filed in the office of the Secretary of State at Frankfort a Petition for Nomination seeking to have Mann's name placed upon the ballot as a candidate for circuit judge for the 36th Judicial District. The petition was signed by more than 400 electors of the district qualified to vote in the regular election to be held November 4, 1969. The petition was filed pursuant to the authorizing provisions of KRS 118.080. In addition to other pertinent language, the petition provides in part: " * * * that the undersigned petitioners and subscribers designate, 'EQUAL JUSTICE UNDER THE LAW' as the name of the party, or as the title of the principle which the said Ben Mann as such candidate represents, and they further designate the picture of (scales of justice) as the figure or devise (sic) by which he shall be designated on the ballot."

Judge Cornett, as Democratic nominee for circuit judge of the 36th Judicial District for the 1969 November election, instituted this action seeking a declaration of rights. He also prayed for a mandatory injunction forbidding the county court clerks of Knott and Magoffin Counties from placing the name of Mann on the ballot. After alleging his own successful nomination in the Democratic Primary of May 1969, Cornett alleged that the Petition for Nomination filed for Mann was filed too late, since it was not filed at least fifty-five days before the day of the primary election.

Cornett further attacked the legality of the Petition for Nomination on the ground that it failed to conform to the provisions of KRS 119.070, alleging that Mann was not nominated by any bona fide party and that no such party as "Equal Justice Under the Law" exists.

Cornett also attacked KRS 119.070(2) as unconstitutional because of such ambiguity and obscurity as to prevent intelligible compliance.

The complaint also avers the unconstitutionality of KRS 118.173 as being ambiguous, obscure, and erroneous. It is asserted that the county court clerks cannot intelligently prepare a ballot pursuant to the provisions of the statute since it refers to KRS 125.050(3) when, in fact, no such statutory section exists.

Cornett also attacked KRS 118.173 as being violative of Sections 6 and 51 of the Kentucky Constitution.

Another assault on the validity of KRS 118.173 is Cornett's contention that the bill, as enacted at the Third Extraordinary Session of the 1963 General Assembly, was not within the Governor's proclamation convening the extraordinary session, thereby running afoul of Section 80 of the Kentucky Constitution.

Mann's pleading affirmatively asserts his entitlement to appear on the ballot at the election to be held November 4, 1969. The trial court ruled that Mann's nomination petition was timely filed and that Mann is entitled to have his name appear on the ballot at the regular election November 4, 1969, as a candidate for circuit judge of the 36th Judicial District.

The trial court adjudged that KRS 119.-070 is constitutional and valid but adjudged that KRS 118.173 is unconstitutional and void as violative of Section 6 of the Kentucky Constitution which requires that all elections shall be "free and equal." In supplementing the latter ruling the trial court directed that Cornett's name be listed with all other Democratic candidates as provided in KRS 118.170(1) and (2) and KRS 125.070. The effect of this ruling, of course, would be that Cornett's name would appear under the Democratic party emblem and that a straight-party vote for

the Democratic ticket would register a vote for Cornett.

For convenient reference we quote KRS 118.173:

"(1) The names of the candidates for the offices of judge of the Court of Appeals and circuit judge shall be placed on the voting machine at the regular election in a column or line headed or preceded by the words 'Judicial Ballot,' in such a manner that the casting of a vote for all of the candidates of one party as contemplated by KRS 125.050(3) will not operate to cast a vote for such judicial candidates. When voting machines are not used, the names of such judicial candidates shall be placed upon a separate ballot styled 'Judicial Ballot.' Each candidate shall be designated by the name of the political party by which he was nominated, or if an independent, by the designation specified in his nominating petition.

"(2) The names of the candidates shall be arranged in such order as may be determined by lot in the same manner as provided in subsections (2) and (3) of KRS 119.140."

The judgment also provided that the name of Mann should appear on the ballot at the election November 4, 1969, under an emblem depicting the scales of justice.

Mann has appealed from so much of the judgment as holds unconstitutional KRS 118.173, and Cornett has perfected a cross-appeal attacking so much of the judgment as permits Mann's name to be placed upon the ballot in the November 1969 election.

The circuit court was correct in finding that the Petition for Nomination was timely filed. KRS 446.030 relating to computation of time, as construed in Treadway v. Miller, Ky., 354 S.W.2d 500, is dispositive of the point and fully sustains the circuit court's ruling on it.

KRS 118.080(1) provides:

"A candidate for any office to be voted for at any regular election may be nominated by a petition of electors qualified to vote for him, complying with the provisions of subsection (2) of this section."

KRS 118.080(2), after specifying minimum requirements for signatories of the petitions for various offices, provides in pertinent part:

"If any person joins in nominating, by petition, more than one nominee for any office to be filled, he shall not be counted as a petitioner for either nomination. The petition shall state the name and residence of each of the candidates, that he is legally qualified to hold the office, and that the subscribers desire, and are legally qualified, to vote for the candidate. The petition shall designate a brief name or title of the party or principle that the candidate represents, together with any simple figure or device by which it is desired that he be designated on the ballots."

KRS 119.070, so far as pertinent to the questions at hand, provides:

"(1) The provisions of KRS 119.050 do not apply to candidates for judge of the Court of Appeals or to candidates for judge of the circuit court. For such judicial positions any eligible person may become or be proposed as a candidate for nomination by any and every political party having a ticket to be voted for in the district for which the office is to be filled, but such persons shall not be required to seek the nominations nor to make a declaration of party loyalty or support, and as a requirement for such nomination shall not be required to be registered as affiliated with any political party or to be registered at all as a voter. The nomination may be proposed for an eligible candidate either by resolution of the proper committee, or by the application of reputable electors, of any political party whose nomination is sought. The resolution or application shall be filed as provided by KRS 119.-080 for other nomination papers. The

name of a candidate shall not be placed upon the ballot if, before the preparation of the ballots, he files with the officer with whom the nomination papers were filed a written objection, signed and sworn to by him.

"(2) The name of a successful candidate in the primary for nomination for judicial offices shall appear on the ballot at the regular election under the device of as many political parties as have nominated the candidate. He may appear thereon by petition of voters, or otherwise as may be permitted by law, and at the regular election shall be entitled to the total of the votes that he receives on the ballot."

■ Cornett contends that the provisions of KRS 119.070 require that a candidate for judicial office[1] be nominated by a recognized political party, but we do not so interpret that statute, although it is true that KRS 119.070(1) provides in part: "The nomination may be proposed for an eligible candidate either by resolution of the proper committee, or by the application of reputable electors, of any political party whose nomination is sought." The same subsection provides that the judicial candidate need not be a member of any party nor make any designation of party loyalty or support and is not even required to be a registered voter. KRS 119.070(2) specifically recognizes that the name of the successful candidate in the primary for nomination for judicial offices shall appear on the ballot at the regular election under the device of as many political parties as have nominated him—and: "He may appear thereon by petition of voters, or otherwise as may be permitted by law, and at the regular election shall be entitled to the total of the votes that he receives on the ballot."

It is clear that there is no such "political party" as "Equal Justice Under the Law," but the court is persuaded that as respects judicial officers there is no requirement

that the nomination be made by a major political party as defined in KRS 119.010 nor by a minor political party as mentioned in KRS 118.090. The plain provisions of KRS 119.070(2) direct that such judicial candidate may appear on the ballot at a regular election by a petition of voters. KRS 118.110(1) provides in part:

"No candidate who has been defeated for the nomination for any office in a primary election, *except a candidate for judge of the Court of Appeals or judge of the circuit court*, shall have his name printed on the ballot in the succeeding regular election as a candidate for the same office for the nomination to which he was a candidate in the primary election, * * *." (Emphasis added.)

■ Considering the statutory provisions which we have quoted and discussed, it seems plain that the Legislature has clearly and unmistakably provided that a candidate for judicial office may be nominated for a position on the ballot at a regular election by petition as well as by the nominating processes permitted for major and minor political parties. We can perceive no statutory basis for requiring that the nomination for such an office be at the hands of a political party. This view is buttressed by Vaughan v. Roberts, 192 Ky. 364, 233 S.W. 733, treated more fully later.

■ Neither are we persuaded that KRS 119.070(2) must be struck down because of ambiguity or obscurity preventing intelligible compliance with it. When KRS 119.070(2) is read in light of KRS 118.173 (1), the claimed ambiguity and obscurity of KRS 119.070(2) are dispelled. It is our holding that KRS 118.173(1) requires that the names of judicial candidates be placed upon the voting machine at the regular election in a column or line headed or preceded by the words "Judicial Ballot" in such a manner that a "straight-party" vote, as contemplated by KRS 125.040(3), will

[1]. As used in this opinion, judicial office refers to judges of the Court of Appeals and of the circuit courts.

not operate to cast a vote for the judicial candidate. It is appropriate to observe that KRS 118.173(1) mistakenly refers to KRS 125.050(3) in speaking of the straight-party vote. This is obviously a clerical misprision, as KRS 125.050 has no subsections and relates only to custody of voting machines before an election. KRS 125.040 (3) is the appropriate statutory reference as is made obvious from the text of KRS 118.173.

What we have just said as respects the claimed ambiguity and obscurity of KRS 119.070(2) applies also to the similar attack made on KRS 118.173. There is no ambiguity in the latter section when it is recognized that its reference to KRS 125.050 (3) properly is a reference to KRS 125.040 (3).

The trial court considered that KRS 118.173 contravenes Section 6 of the Kentucky Constitution which provides: "All elections shall be free and equal." The requirement that elections shall be "free and equal" has been construed to mean that the voter shall not be physically or otherwise restrained in the exercise of his right of franchise and that every voter shall have the same right as any other voter in like circumstances. Robertson v. Hopkins County, 247 Ky. 129, 56 S.W.2d 700; Crockett v. Olive, 247 Ky. 133, 56 S.W.2d 702. As noted, KRS 118.173 provides for a separate judicial ballot, but it affords every voter an equal right to exercise his franchise in the selection of judicial officers. No discrimination against any voter is effected by reason of a separate judicial ballot. The Kentucky Constitution makes no reference to any political party. There is no constitutional right for any person to be identified in a regular election by the device or emblem of any political party. Neither is there any constitutional right for any voter to rely upon a device or emblem of any political party as a guide in making a choice among candidates. It is true that the statutes we have discussed recognize the existence of political parties and make provisions for straight-party-

ticket voting and the use of party devices and emblems, but they pointedly exclude from their application candidates for judicial office.

Our Constitution requires free and equal elections and affords equal protection to all citizens, but it is a well-accepted premise of constitutional law that reasonable classifications may be provided even in elections so long as the election is public and open to all qualified electors alike and where every voter has the same right as any other voter to cast his ballot for the candidate of his choice. Asher v. Arnett, 280 Ky. 347, 132 S.W.2d 772. We regard it as self-evident that KRS 118.173 meets the constitutional standard of affording each voter the free and equal opportunity to cast his ballot within the pronouncements of Asher v. Arnett, supra.

We also believe it is beyond cavil that a valid basis exists for providing a separate judicial ballot. The duties and responsibilities of judicial officers are widely different from the duties and responsibilities imposed upon executive and legislative officers. Judicial officers are required to administer the law fairly and honestly without reference to party principles or political influences. Judges may not promulgate nor adhere to party platforms in interpreting the law. No voter, either literate or illiterate, may constitutionally demand the right to rely on the political affiliation of a candidate for judicial office as a measure of that candidate's fitness for the special duties of the important office he seeks. This court has held that a nonpartisan judicial act is constitutional. Hawkins v. Auxier, 311 Ky. 186, 223 S.W. 2d 752; Prewitt v. Caudill, 250 Ky. 698, 63 S.W.2d 954. In an able amicus curiae brief by the Attorney General, our attention has been directed to State ex rel. Weinberger v. Miller, 87 Ohio St. 12, 99 N.E. 1078 (1912), in which the Ohio court pointed out in detail the underlying reasons permitting the reasonable and proper classification for a separate judicial ballot without party identification. Without ex-

pressing complete approval of all that is said in that opinion, we refer to it with general approval insofar as it points up and agrees with the principles we have stated already.

It is contended for Judge Cornett that KRS 118.173 violates Kentucky Constitution Section 51, because it encompasses subject matter different from the subject matter embraced in the title. The title of the act as contained in Senate Bill 1, Kentucky Acts, Third Extraordinary Session 1963, is: "AN ACT relating to the judiciary, with particular relation to the nomination, election and compensation of its members." The act does not deviate from that title. Neither does the act purport to revise or amend any other statute. The act does not violate Section 51 of the Kentucky Constitution. Cf. Fiscal Court of Jefferson County v. City of Anchorage, Ky., 393 S.W.2d 608.

Finally, it is argued for Judge Cornett that KRS 118.173 must be struck down because it violates Section 80 of the Kentucky Constitution as being beyond the scope of the call for the special session at which it was enacted. It is pointed out that one of the purposes of the call, as defined in the Governor's proclamation, was for legislative determination whether to provide for the nonpartisan election of judges of the Court of Appeals and the circuit courts. It is reasoned that KRS 118.173 does not relate to *non*partisan selection of judges but maintains *bi*partisan selection of such officers. We think this construction may not prevail. The act specifically excludes straight-party voting and excludes the use of party emblems and limits the candidate's designation to the name of the political party by which he was nominated or, if an independent, by the designation specified in his nominating petition. It is our view that the statute, as enacted, falls within the scope of the call for the extraordinary session.

On the cross-appeal it is urged that so much of the judgment be reversed as permits Mann's name to appear on the ballot for the November 4, 1969, election. We have already pointed out that KRS 118.110 specifically excepts judicial candidates from its provision preventing a candidate defeated in the primary from having his name printed on the ballot for the same office at the ensuing general election. We take it that without KRS 118.110 there would be no legal basis for excluding from the ballot at the general election the name of the candidate defeated in the primary. Since, in the circumstances at bar, the very statute which forecloses a defeated candidate's name from appearing on the general election ballot specifically excludes from it's operation judicial officers, it follows that there is no statutory inhibition against participation in a general election respecting a judicial officer defeated in the primary. Our holding is not inconsistent with the holding in Stephenson v. Riddle, Ky., 371 S.W.2d 871, in which it was held that an unsuccessful candidate for the *Democratic* nomination for circuit judge in Division No. 2 of Pike County could not be designated as the *Republican* nominee for circuit judge in Division No. 1 of Pike County when a vacancy occurred in the Republican nomination for that post after the primary. In Stephenson, authority for nominating the candidate already defeated in the primary was sought under KRS 119.020(3) relating specifically to nominations in primaries by political parties. There is nothing in the holding in Stephenson v. Riddle to suggest that the defeated primary candidate there would have been excluded from the general election ballot if he had complied with KRS 118.080 respecting a nomination by petition.

It may be reasoned that to permit a candidate to seek a nomination in a party primary while proceeding to obtain a nomination by petition is to frustrate the purpose of the primary. However, that same contention was advanced and rejected in Vaughan v. Roberts, 192 Ky. 364, 233 S.W. 733, which involved an election for circuit judge. Roberts filed in the Republican Primary for 1921 as a candidate

for nomination as circuit judge. He was defeated in that primary. At that time, Section 1453 of the Kentucky Statutes permitted a Petition for Nomination to be filed *after* the primary; Roberts filed such a Petition for Nomination. This court ruled that Roberts was entitled to have his name appear on the ballot as an independent candidate, despite the fact that he had been defeated in the Republican Primary for the same office. The rationale of that decision is apposite here.

It is not questioned—and could not be questioned—that the statutes relating to judicial offices envision "cross-filing." Petitions for such nominations may be filed in one or more primaries. If a candidate loses one primary and wins another, he certainly is entitled to appear on the ballot in the general election—designated by the name of the party whose nomination he won. By the same token, there can be no question but that a judicial candidate's name may be placed on the ballot by Petition for Nomination filed pursuant to KRS 118.080. There is no statute which provides that one who proceeds by petition under KRS 118.080 *loses* his rights thereunder by becoming a candidate in one or more of the party primaries for the same judicial office. It seems clear that the Legislature would have made a specific provision precluding a nomination by Petition for Nomination *and* filing in a party primary if it had intended such a result. This court does not have the prerogative to write in such a provision. The legislation before us seems too clear to admit of a construction denying Mann's right to appear on the ballot.

A majority of the court is of the view that Mann qualifies as an "independent" within the purview of KRS 118.173(1). KRS 118.070 prescribes the rules as to persons who are entitled to have their names placed on the ballot for regular elections. The first paragraphs of KRS 118.070(1) relate to candidates of major political parties as defined in KRS 119.010—obviously Mann does not qualify as such a candidate. KRS 118.070(1) (d) directs the county

court clerks to include on the ballot for any regular election: "Candidates who have been nominated by a political organization as provided in KRS 118.090 * * *." KRS 118.070(1) (e) then directs the county court clerks to include on the ballot for a regular election: "Candidates who have been nominated by petition as provided in KRS 118.080 * * *."

It is plain that the Petition for Nomination filed in Mann's behalf was not undertaken as if filed by a "political organization" as provided in KRS 118.090, since it does not and could not assert that Mann's sponsors "cast two percent of the total vote of the state at the last preceding regular election." It is true that the Petition for Nomination designated "Equal Justice Under the Law" as "the name of the party, or as the title of the principle which the said Ben Mann as such candidate represents." However, that language conformed to the specific requirement for a Petition of Nomination under KRS 118.080 (2). The petition filed in Mann's behalf complied with the requirements of KRS 118.080; it did not purport to comply with any other procedure for nomination. If the term "independent" as used in KRS 118.173(1) is to have any meaning, it must be construed as relating to persons whose entitlement to appear on the ballot stems from compliance with KRS 118.080.

In Greene v. Slusher, 300 Ky. 715, 190 S.W.2d 29, 30, it is written:

"Our statutes recognize three distinct groups as being entitled to have their respective candidates or nominees voted for in a regular election, namely, (1) a political party; (2) a political organization which polled as much as two per cent of the total vote of the state at the last presidential election; and (3) independent candidates or a political organization which did not cast that percentage of the total vote in the presidential election."

In Greene v. Slusher there was a specific "political organization" but not one

which had polled as much as two percent of the total vote of the state. The "political organization" had a constitution augmented with by-laws. Their petition presented a complete slate of candidates. In short, the "political organization" in Greene v. Slusher was one which the court regarded as a group striving to achieve status as a recognized, permanent political party— not a "one-shot" association of electors interested only in nominating one man for one district office. The same may not be said of the petition filed for Mann. It is devoid of any suggestion that its subscribers undertake to launch a genuine political party, or that they seek to take the first step in that direction by forming a "political organization."

It follows that there is no political party by whose name Mann may be designated on the ballot as prescribed in KRS 118.173(1). Thus, by process of elimination, Mann is an "independent." He must be designated as such on the ballot. The words "or if an independent, by the designation specified in his petition," used in KRS 118.173(1), must be construed in light of the entire legislative pattern of which they are a part. It is not consonant with the nonpartisan spirit of KRS 118.173 to construe it as denying emblems, devices, and slogans to nominees of major and minor parties while affording their use to independent candidates. An "independent," as used in the statute, means one who has no party endorsement or affiliation as respects the election in which he is a candidate. If his name on the ballot is embellished by adding any emblem, device, or slogan he loses, to that extent at least, the status of "independent" and becomes partisan. Hence, we hold that Mann shall be designated only as "Independent" on the ballot.

To the extent that the judgment of the circuit court provided that Mann's name should appear on the ballot under the emblem of scales of justice, it must be modified so as to provide that Mann's name shall appear on the ballot for the regular election to be held November 4, 1969, identified by the designation "Independent" without any device or emblem. To the extent that the judgment of the trial court directs that the name of Cornett appear on the ballot for the regular election November 4, 1969, under the Democratic emblem and in column with the other Democratic candidates, it must be modified by providing that the name of Cornett shall appear on a separate judicial ballot identified by the word "Democrat" without any party emblem.

The judgment is reversed on the original appeal insofar as it holds KRS 118.173 to be unconstitutional. The judgment is affirmed on the cross-appeal insofar as it holds that Mann's name shall appear on the ballot for the general election to be held November 4, 1969, but to be modified consistent with the opinion.

All concur.