## Wright v. Lyddan, et al.

(Decided March 22, 1921.)

### Appeal from Breckinridge Circuit Court.

1.  Schools and School Districts—Election of County Board of Education—Right of Colored Voters Residing in White Graded School Districts to Vote.—Under section one, chapter 36, Acts 1920, creating a county board of education "which shall be composed of five members elected by the qualified voters of the county, exclusive of voters residing in cities of the first, second, third and fourth class, or city or district having an independent school system of its own," colored voters living in white graded school dis-

tricts are not excluded as they are not residents of such districts within the meaning of the school law.

2 Elections—Contest—Exclusion of Qualified Voters—Validity.— Where at an election the number of qualified voters denied the right to vote was sufficient to affect the result as to certain candidates declared elected, the election will be set aside on the ground that it can not be determined with certainty that the result, as certified by the canvassing board, represented the will of the majority of the voters.

W. S. BALL and MOORMAN & WOODWARD for appellant.

CLAUDE MERCER and MOORMAN & WALLS for appellees.

OPINION OF THE COURT BY JUDGE CLAY—Affirming as to Eliza Pile and reversing as to Robert Weatherford, Tice McCoy, Mike Lyddan and C. L. Miller.

The county board of education is composed of five members, and at the November election, 1920, there were six candidates for membership on the Breckinridge county board of education. The vote was as follows: Eliza Pile, 2,506; Robert Weatherford, 2,046; Tice McCoy, 2,069; Mike Lyddan, 2,045; C. L. Miller, 2,197 and G. A. Wright, 1,981. There were four graded white school districts in the county, but no districts having independent school systems for colored children. In the white graded school districts there were 350 colored voters. Of these about 220 demanded ballots and offered to vote in the school election, but were denied the right to vote.

G. A. Wright brought suit against Eliza Pile and the other candidates who received certificates of election, for the purpose of having the election declared void. The petition was dismissed and Wright appeals.

The principal question to be decided is whether colored voters who do not reside in colored districts having independent systems of schools, but do reside within white graded school districts, have the right to vote for members of the county board of education. The applicable portion of the statute is as follows: "There is hereby created in each county of the Commonwealth of Kentucky, a county board of education which shall be composed of five members elected by the qualified voters of the county, exclusive of voters residing in cities of the first, second, third and fourth class, or city or district having an independent school system of its own." Section 1, chapter 36, Acts 1920, p. 148. The question turns on the meaning of the words "exclusive of voters resid-

ing in cities of the first, second, third and fourth class,
or city or district having an independent school system
of its own.'' If this language be construed so as to ex-
clude all residents of other independent school districts,
the necessary effect will be to exclude white voters living
in colored graded school districts, and colored voters
living in white graded school districts, and thereby de-
prive them of any voice in the management and control
of the schools of the county. Clearly a construction
that discriminates between the voters by giving the right
of suffrage to some and denying it to others similarly
situated is not to be favored. Therefore, let us consid-
er the language in question in the light of the conditions
existing when the statute was enacted, and the purpose
which the legislature had in view. At that time, cities
of the first, second, third and fourth classes had separate
and independent school systems of their own, governed
by boards of education in whose election both white and
colored voters had a voice. In some counties there were
both white graded school districts and colored graded
school districts. These districts were separate and dis-
tinct from each other. The white districts were main-
tained solely by taxes on property of white citizens, who
alone had a voice in the selection of the trustees. On the
other hand, only the property of colored citizens in col-
ored graded school districts was assessed for the main-
tenance of the schools in those districts, and only colored
voters had a voice in the selection of the trustees. It will
thus be seen that there were in every county certain
schools and school districts controlled by certain agen-
cies already provided for by law. It was not the purpose
of the legislature, in providing for county boards of edu-
cation, to interfere with these agencies, but its sole object
was to give to the county board of education the manage-
ment and control of all the schools of the county not com-
mitted to the care of other boards or agencies created by
the state, and to give to all the qualified voters of the
county, except those having the right to vote in indepen-
dent districts, the right to vote for members of the board.
Not only does this purpose appear from the language of
the act considered as a whole, but it seems to us that the
very language in question is not susceptible of any other
interpretation when considered in the light of the condi-
tions prevailing when the act was passed. As before
stated, white graded school districts and colored graded

school districts were separate and distinct. Neither had any existence so far as persons of the other race were concerned. Therefore, colored persons within the limits of a white graded school district were not regarded as residents of that district within the meaning of the school law, and the same was true of white persons living within the limits of a colored graded school district. We therefore conclude that the legislature, in using the language, "exclusive of voters residing in," meant only those voters who resided in a district which provided schools for the race to which they belonged, and who had a voice in the election of the board of trustees of such district. It follows that the colored voters who lived in a white graded school district should not have been denied the right to vote.

The lower court found that at least 220 colored voters offered to vote but were denied the right to vote. If all these votes be added to those of contestants, his total vote will not equal the votes of Eliza Pile. That being true, it is clear that the exclusion of the 220 votes in no wise affected her election. However, if the 220 votes be added to those received by contestant, his total will exceed the number of votes received by Weatherford, McCoy, Lyddan and Miller. Therefore, so far as Weatherford, McCoy, Lyddan and Miller are concerned, the case is one where ten per cent. of the legal voters were denied the right to vote, and the number was sufficient to affect the result. In such a case the election will be set aside on the ground that it can not be determined with certainty that the result, as certified by the canvassing board, represented the will of the majority of the voters. Walbrecht v. Ingram, 164 Ky. 463, 175 S. W. 1022.

Wherefore the judgment is affirmed as to Eliza Pile and reversed as to Robert Weatherford, Tice McCoy, Mike Lyddan and C. L. Miller, with directions to declare their election void.

Whole court sitting.