## Robertson et al. v. Hopkins County et al.

(Decided Jan. 27, 1933.)

CHAS. G. FRANKLIN and C. J. WADDILL for appellants.

J. T. GOOCH for appellees.

WEBB &WEBB amici curiae.

OPINION OF THE COURT BY CHIEF JUSTICE DIETZMAN —Reversing.

The sole question presented by this appeal is the constitutionality of chapter 68 of the Acts of 1932 which is an act providing for the election of county school superintendents by popular vote. In form, it is an

amendment to what is known as section 4399a-10 of the statutes and in substance it merely changes that section in so far as it prescribed for the election or appointment of the county superintendent by the county boards of education and the fixing of his salary by that body. The 1932 act provides for an election of such superintendent by the people and the fixing of his salary by the fiscal court of the county he serves. The lower court held the act constitutional and this appeal results.

The appellant claims that the act is unconstitutional for these reasons: (1) The title violates section 51 of the state Constitution; (2) it violates sections 6 and 13 of the state Constitution and the Fourteenth Amendment to the Federal Constitution; (3) the act violates sections 59 and 60 of the state Constitution because it is local and special legislation; (4) it violates section 234 of the state Constitution because it provides for a civil officer of the state without requiring him to be a resident of the district in which he is elected; (5) it is unconstitutional because it provides for a board to fix the salary of the county superintendent which is not elected by the county school unit. Inasmuch as we think that the second ground relied upon, in so far as it asserts the act violates section 6 of the state Constitution is meritorious, it will not be necessary to consider or discuss the other grounds.

Chapter 68 of the Acts of 1932 in prescribing who shall be the electors of county school superintendents provides in substance that such a superintendent shall be elected by the voters of the county which he is to serve, but that the voters in cities of the first, second, third, and fourth class shall not be eligible to vote for such county school superintendent. We may recall in passing that the county school superintendent has no duties to perform whatever in, and is in no wise concerned with, the independent graded school districts of the state, or the schools in those cities which, under the law, are authorized to maintain their own school system. So far as cities of the fourth class are concerned, the school districts which serve these fourth class cities are in most instances not coincident in boundary with the corporate limits of such fourth class cities. Indeed, it may be said that most, if not all, of the school boundaries of the school districts of which the fourth class

cities form a part extend beyond the corporate limits of such cities.

In the instant case, there are two such fourth class cities of Hopkins county, Madisonville and Earlington, the corporate limits of both of which are well within the boundaries of the school districts of which such cities form a part. The same is true of the city of Mayfield in the companion case of Crockett v. Olive et al., 247 Ky. 133, 56 S. W. (2d) —, this day decided. The result under the 1932 act is this: Voter A of the Madisonville school district who resides within the corporate limits of Madisonville has no voice in the selection of the county school superintendent, whereas voter B who lives in the same school district but outside the corporate limits of the city of Madisonville has such a vote. Moreover, voters of independent graded school districts are entitled to vote for these county school superintendents though voters who reside in cities of the named classes may not. Thus voters in the Dawson Springs Graded School District which is located in Dawson Springs, a city of the fifth class, vote, under the 1932 act, for county school superintendent whereas voters in the corporate limits of Madisonville, which is in the same county as Dawson Springs, do not, the county school superintendent having nothing to do with the schools of either municipality. Passing the question whether the Legislature may give to voters residing in a school district concerning which the county school superintendent has no connection the right to vote for such superintendent, we are yet met with the proposition whether or not the Legislature can discriminate between voters A and B or between voters in Dawson Springs and voters in Madisonville in the manner above stated. We are of the opinion that it may not. Section 6 of our Constitution declares that all elections shall be free and equal. As said in Winston v. Moore, 244 Pa. 447, 91 A. 520, L. R. A. 1915A, 1190, Ann. Cas. 1915C, 498, such a declaration means "that the voter shall not be physically restrained in the exercise of his right of franchise, by either civil or military authority, and that every voter shall have the same right as any other voter." Or, as expressed in Cooley's Constitutional Limitations (8th Ed.) vol. 2, p. 1370:

"All regulations of the election franchise, however, must be reasonable, uniform and impartial."

It should not require argument to demonstrate that, if the voters of school districts which are independent of the county school system are permitted to vote for the county superintendent, all of the voters of such districts should be accorded that privilege, otherwise we have a discrimination that cannot be justified.

It is argued, however, that the 1932 act should be so construed as to have it mean that voters of the school districts containing cities of the fourth class are the ones to be excluded from voting for county school superintendents rather than voters who reside in the corporate limits of such cities. Even so, this would not take care of the discrimination between them and voters, say of the Dawson Springs graded school district. But it is apparent from reading the 1932 act that it did not intend to exclude from the electorate those who resided in independent graded school districts. There is no contention here but that the voters in the Dawson Springs graded school district have the right to vote. So it is not residence in an independent graded school district which disqualifies the voter. It is a residence in one of the cities of the classes named that does so. Hence, we cannot give to the act the construction urged. Nor does the case of Wright v. Lyddan, 191 Ky. 58, 229 S. W. 74, relied upon by the learned trial judge, militate against these views. There the question turned on the definition of the word "voter" in section 1 of chapter 36 of the Acts of 1920, and it was held that the excluding clause of that act meant to exclude only voters who had a right to vote in the districts and cities there mentioned. Here the act specifically says that the voters who are excluded are those who reside in the cities of the classes named. It does not exclude those outside such cities.

Our views being such, it follows that chapter 68 of the Acts of 1932 is unconstitutional. The judgment is reversed with instructions to enter a judgment in conformity with this opinion.

Whole court sitting.