## Grauman, County Attorney, v. Jefferson County Fiscal Court et al.

April 30, 1943.

150

Lawrence S. Grauman and Harry F. Malone for appellant.

Hal O. Williams and Lawrence S. Poston for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Affirming.

This action was instituted under the Declaratory Judgment Act, Section 639a—1 et seq., Civil Code of Practice, to test the constitutionality of chapter 181 of the Acts of 1942, KRS 125.010 to 125.990, known as the voting machine act; and if the Act is upheld, to declare which member of the board of election commissioners of Jefferson County shall determine what instructions should be given the election officers under KRS 125.100; and which member of the commission is entitled to receive the keys to the voting machines under KRS 125.080.

The chancellor sustained the constitutionality of the Act and adjudged that in the event the members of the commission could not agree upon the instructions to the election officers, then the sheriff (who is ex-officio a member of the commission) has the deciding voice; that as there are three master keys for each voting machine,

each of the three members of the commission should keep one of these master keys and the commission should promulgate rules to determine which member keeps what key.

On this appeal it is insisted that the Act violates Sections 147 and 6 of the Kentucky Constitution, the former section providing for a secret ballot and the latter that all elections should be free and equal.

At its 1938 session the General Assembly enacted chapter 133 of the Acts of that year (now Section 1596d-1 to 1596d-28, Baldwin's 1938 Supplement) authorizing the fiscal court of any county or any municipality through its legislative body to rent or purchase voting machines and provide for their use. In Jefferson County, etc., v. Jefferson County Fiscal Court, 273 Ky. 674, 117 S. W. (2d) 918, 923, the Act of 1938 was held to have run afoul Section 147 of the Kentucky Constitution, and in reference to this section it was written in that opinion:

"Certainly, it cannot be said that the requirements that a ballot shall be 'furnished' to the voter and shall be 'marked' by him and 'then and there deposited' may be ignored."

Section 147 was amended by a vote of the people in 1940 and there was inserted this sentence: "Provided that counties so desiring may use voting machines, these machines to be installed at the expense of such counties." With the insertion of this sentence in Section 147, it is apparent that the casting of a ballot through a voting machine no longer offends the Constitution for the reason given in Jefferson County, etc., v. Jefferson County Fiscal Court, supra. By referring to that opinion and to an annotation in 66 A. L. R. 855, the reader will find numerous cases holding that the use of voting machines does not violate the constitutions of many states of the Union providing for elections by secret ballot.

The 1942 Act is quite similar to the 1938 Act and provides a comprehensive plan for the use of voting machines in all elections. However, the use of the machines is left to the discretion of the fiscal courts of the various counties as it appears such machines are quite expensive to purchase or to rent. It is provided in the Act, KRS 125.140, that an illiterate, blind or physically disabled voter who is unable to operate a voting machine, upon making oath to that effect, may be accompanied to the

machine by the two judges of the election, one of whom in the presence of the other and the voter will operate the machine as the voter directs. It is insisted that a vote thus cast by one under such disability is not secret as required by Section 147. The 1940 amendment of Section 147 added the words "and/or voted" in the last sentence of that section which sentence now reads:

"The first General Assembly held after the adoption of this Constitution shall pass all necessary laws to enforce this provision, and shall provide that persons illiterate, blind, or in any way disabled, may have their ballots marked and/or voted as herein required."

Therefore at the time of the passage of the 1942 Act, Section 147 expressly states that the illiterate, blind or disabled citizens shall use the machine in voting, and the provisions of KRS 125.140 make such a person's vote practically secret and about as much so as does KRS 118.300 when the machine is not used by one so handicapped.

The record before us shows that the fiscal court of Jefferson County has rented only 25 voting machines, and that in the remaining 605 precincts in the county voting will be done by hand, stencil and ballot. Therefore, it is urged that where machines are not used in all precincts of the county the election is not free and equal and Section 6 of the Constitution is violated. The fact that the voting is by machine in some precincts and by hand in others in nowise prevents the election from being free and equal. A vote cast by machine has the same force as one cast by hand and the machine gives no advantage to a voter nor does it place any disadvantage upon him. Also, there is no more opportunity for fraud in voting by one method than by the other. Section 6 of our Constitution is violated when the same opportunity for voting is not given to all persons entitled to the ballot, or when the right of franchise is restrained by civil or military authority. Robertson v. Hopkins County, 247 Ky. 129, 56 S. W. (2d) 700; Smith v. Kelly, 248 Ky. 370, 58 S. W. (2d) 621. As was said in 2 Cooley's Constitutional Limitations p. 1370, 8th Ed.: "All regulations of the election franchise, however, must be reasonable, uniform and impartial."

The 1942 Act permits the fiscal court to purchase or

rent voting machines for use in some precincts but does not require the fiscal court to furnish them in others. As Section 147 of the Constitution directed the General Assembly to pass "all necessary laws to enforce this provision," which has reference among other things to voting machines, the Legislature in passing this Act followed the constitutional mandate. In Mooney v. Phillips, 173 Tenn. 398, 118 S. W. (2d) 224, it was expressly decided that the Legislature has the power to authorize the use of voting machines in some precincts of a county without requiring them to be used throughout the county.

The answer to the argument that the use of voting machines makes it impossible to rotate the names of candidates on the ballot for membership on the board of education on each fiftieth ballot as provided in KRS 160.230, is that Section 147 of our Constitution as amended authorizes counties so desiring to use voting machines in all elections. If the provisions of KRS 160.230 relative to rotating the names of candidates for membership on the board of education on the ballot cannot be met where voting is by machine, and we do not comprehend how it is possible to do so, then that part of KRS 160.230 is repealed by the 1942 Act wherever voting machines are used in election for members of boards of education.

We agree with the chancellor that should the county board of election commissioners created by KRS 116.040 be unable to agree as to what instructions relative to the use of the voting machines as provided in KRS 125.100 should be given the election officers by the commission, that the sheriff (ex-officio a member of the commission) should have the deciding voice. It is almost inconceivable that the members of the commission would ever disagree upon anything so simple as giving instructions in the use of a voting machine, but as the commission is composed of one member appointed from each of the two dominant political parties with the sheriff constituting the third member, it is logical that the sheriff should have the deciding vote if the two partisan members become deadlocked, since he normally would represent the party in power which should have the responsibility of conducting a fair election.

The question was raised as to which members of the board of county election commissioners should receive and retain possession of the keys to the voting machines.

It is provided in KRS 125.080, that the master key and all other keys shall remain in the possession of the county board of election commissioners. The report of the two special commissioners appointed to investigate the machines and locks thereon reported there were three master keys to each voting machine. Therefore the chancellor correctly decided that each member of the commission should receive and retain a master key to each machine, the particular key to be determined by rules promulgated by the commission.

The judgment is affirmed.