

# THE ATTORNEY GENERAL
# OF TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

**AUSTIN, TEXAS**

V-1054

December 14, 1949

Hon. L. A. Woods
State Superintendent
Department of Education
Austin, Texas

Opinion No. V-966.

Re: Validity of contract for re-
valuation of property within
Grand Prairie Independent
School District.

Dear Sir:

You have requested the opinion of this office as to
whether the Trustees of Grand Prairie Independent School District
had the authority to enter into a particular contract, a copy of
which is attached to your request. We gather from the accompany-
ing file that the Grand Prairie Independent School District has been
receiving grants from the Federal Government under the Lanham
Act, which provides for aid in the maintenance and operation of
those school districts wherein activities of the Federal Government
have caused such serious financial burdens that the districts can-
not finance the normal operation and maintenance of school facil-
ities. The Federal grants supplement State and local funds avail-
able to school agencies. Tit. 42, Sec. 1535, U.S.C.A.

The Federal authorities have questioned the propriety
of the expenditure of the District's funds under the contract in ques-
tion. If it was within the powers of the Board of Trustees under
applicable statutes to enter into the contract, then school district
funds could be properly used as provided therein; and the Federal
Government will supplement or contribute the maximum amount
allowable as Federal aid; but if neither State nor local school funds
could legally be used to pay for the services rendered under the
contract, the amount expended under the contract cannot be consid-
ered in determining the amount of the Federal grant.

The preamble to the contract recites that "the Tax As-
sessor and Collector of the . . . District does not have available in
his records, lists or records showing the actual value of all prop-
erty within the boundaries of the . . . District; . . . /that/. . . Due
to changes in values over a long period of years the various equal-
ization boards appointed by said . . . District have been unable to
revalue the property to meet the changing . . . values. . .; and . . .
/that/ it will be of inestimable value . . . to the . . . board to have
available . . . records showing the different classes of properties
and their values so that the said board may be able to efficiently
and correctly fix the same proportionate values on all classes of
properties in this . . . District . . ."

The contract proper is between the Grand Prairie Independent School District acting by and through its regularly elected Board of Trustees and the Texas Educational Service Company, a Texas Corporation, engaged in the business of valuation and appraisal. Its provisions may be summarized as follows.

The Service Company agreed to evaluate all land by actual view and to determine the front foot value of all lots and parcels of land within the district. In appraising every lot and parcel of land the company was to follow the best evaluation practices and was to record the results of such appraisals on land and improvement record cards which were to become the permanent record of the district. Likewise the company was to appraise and evaluate all buildings and improvements upon each tract of land, recording numerous specific details with regard to said buildings and improvements on the land and improvement cards above referred to.

The contract specifically required the listing and appraisal of "all tangible personal property, machinery, fixtures and easements belonging to utility companies, pipe lines, communication systems, transportation systems, tank farms, refineries, gas companies, railroads and oil companies." There was likewise a specific requirement to list, appraise and evaluate "all business and professional property, such as stocks of merchandise, materials, business and professional tools, implements, equipment, vehicles, machinery, furniture and fixtures, and libraries." Personal property in homes, automobiles, jewelry, stocks, bonds, and intangible property were expressly excluded from this provision of the contract.

In addition to furnishing one set of sectional maps on any property on which the District did not have such maps and to bringing existing maps up to date, the service company was to bring up to date all ownership sheets of all property within the school district. These sheets were to be on the same forms as the tax collector was then using, such forms to be furnished by the district.

The "experts" of the service company were required to instruct the "Assessors" of the school district in the methods of valuation and computation used by the company "so that the system may be continued and kept up-to-date in the future."

Likewise the company was to "cause a competent representative . . . to attend the hearings of the next Board of Equalization of the Grand Prairie Independent School District . . . to advise with said board, make recommendations to said board and to defend any valuations set under this contract . . . "

In the event "any valuation set up under the contract is attacked or contested in court or other legal proceedings directly or indirectly" the company agreed to furnish a competent witness to testify at such hearing as to the accuracy of the valuations "arrived at under this contract."

A "deputy tax assessor" was to be furnished by the company "to assist in assessing taxes for the thirty (30) day period beginning December 26, 1949, and ending January 25, 1950."

Various other detailed provisions of the contract are not material to the present question. For the performance of the various services enumerated in the contract the school district agreed to pay the service company $11,000.00 to be paid "as the work progresses, in installments, as follows: The first installment of $1,000.00 shall be due and payable January 30, 1949. Thereafter payments of $1,000.00 each shall be due and payable on February 28, 1949, March 31, 1949, April 30, 1949, May 31, 1949. The balance of $6,000.00 shall be due and payable on completion of the work and acceptance of report" by the District.

The general rule is that school districts may not enter into any contract which is not expressly authorized by law or impliedly authorized from powers expressly granted. 37 Tex. Jur. 943, Schools, Sec. 75.

The expenditure of public free school funds is governed by Article 2827, V.C.S. Section 1 of this article provides that the State and county available funds shall be used solely for the payment of teachers' and superintendents' salaries, fees for taking the scholastic census, and interest on money borrowed on short time to pay salaries of teachers and superintendents until school funds for the current year were available.

Section 2 of Article 2827 reads as follows:

"Local school funds from district taxes, tuition fees of pupils not entitled to free tuition and other local sources may be used for the purposes enumerated for State and county funds and for purchasing appliances and supplies, for the payment of insurance premiums, janitors and other employes, for buying school sites, buying, building and repairing and renting school houses, and for other purposes necessary in the conduct of the public schools to be determined by the Board of Trustees, the accounts and vouchers for county districts to be approved by the county superintendent; provided, that when the State available school fund in any city or district is sufficient to maintain the schools thereof in any year for

"at least eight months, and leave a surplus, such sur-
plus may be expended for the purposes mentioned here-
in." (Emphasis ours.)

The underscored portion of the above quoted section
has been construed by our courts in numerous opinions. It has been
held sufficiently broad to authorize the trustees to expend local
school funds for the construction of living quarters for teachers,
Adams v. Miles, 300 S.W. 211, affirmed 41 S.W.2d 21 (Tex. Comm.
App. 1931); for establishing a health department as part of the school
system, Mosely v. City of Dallas, 171 S.W.2d 36 (Tex. Comm. App.
1929); and for employing an attorney to represent the trustees in a
suit to cancel a teacher's contract. Arrington v. Jones, 191 S.W. 361
(Tex. Civ. App. 1917).

In general it may be said that "trustees are authorized
to expend funds derived from local sources and the surplus of the
State and county available school funds, for any and all purposes
enumerated by law, and for such other purposes as, in the discre-
tion of the board, may be reasonably necessary in the maintenance
of the schools." 37 Tex. Jur. 970, Schools, Sec. 98.

Articles 2791, 2792, and 2792b, V.C.S., expressly deal
with assessing and collecting taxes for independent school districts.
Article 2791 reads as follows:

"There is hereby created the office of assessor
and collector of each independent school district, wheth-
er created by special or general law, who shall be ap-
pointed by the Board of Trustees thereof, and shall have
the same power and shall perform the same duties with
reference to the assessment and collection of taxes for
free school purposes that are conferred by law upon the
assessor and collector of taxes in and for any incorpo-
rated city, town or village, or upon the person or officer
legally performing the duties of such assessor and col-
lector, and he shall receive such compensation for his
services as the Board of Trustees may allow, except in
cities and towns provided for, not to exceed four (4)
per cent of the whole amount of taxes received by him.
He shall give bond in double the estimated amount of
taxes coming annually into his hands, payable to and to
be approved by the president of the Board, conditioned
for the faithful discharge of his duties, and that he will
pay over to the treasurer of the Board all funds com-
ing into his hands by virtue of his office as such asses-
sor and collector; provided that in the enforced collec-
tion of taxes the Board of Trustees shall perform the
duties which devolve in such cases upon the city council

of an incorporated city or town, the president of the
Board of Trustees shall perform the duties which de-
volve in such cases upon the mayor of an incorporated
city or town, and the county attorney of the county in
which the independent school district is located, or the
city attorney of the incorporated city in which said dis-
trict or a part thereof is located, shall perform the
duties which in such cases devolve upon the city attor-
ney of an incorporated city or town under the provisions
of law applicable thereto. It shall be within the discre-
tion of the Board of Trustees of any independent school
district to name an assessor of taxes who shall assess
the taxable property within the limits of the independ-
ent school district within the time and in the manner
provided by existing laws, in so far as they are appli-
cable, and when said assessment has been equalized
by a Board of Equalization appointed by the Board of
Trustees for that purpose, shall prepare the tax rolls
of said district and shall duly sign and certify same to
the county tax collector, or the city tax collector as
provided for in the succeeding article. The said asses-
sor of taxes shall receive a fee of two (2) per cent of
the whole amount of taxes assessed by him as shown by
the completed certified tax rolls."

This article is applicable to the "tax assessor and col-
lector of the Grand Prairie Independent School District."

Article 2792 provides an alternative method by author-
izing the Board of Trustees to have the taxes of their district as-
sessed and collected, or collected only, by the county assessor and
collector, or by the city assessor and collector of an incorporated
city or town in the limits of which the school district or a part there-
of is located. Other provisions of this article pertain to valuation,
payment of assessors and collectors, etc.

Article 2792b authorizes the trustees of independent
school districts lying partly within and partly without the limits of
any incorporated city or town to have separate Boards of Equaliza-
tion and separate Assessors and Collectors for such two portions
of the district under certain circumstances.

The above quoted and summarized articles thus confer
upon Boards of Trustees of Independent School Districts expressly
enumerated powers in connection with assessing and collecting dis-
trict taxes.

An assessor and collector appointed in pursuance of the
provisions of Article 2791 is "as to powers (Art. 1147, R.S.) . . .

granted all of the authority that is prescribed in Ch. 5, Title 28, relating to cities, towns and villages." Republic Ins. Co. v. Highland Park Independent School Dist., 123 S.W.2d 784, 792 (Tex. Civ. App. 1938, Dismissed W. O. J. - Correct Judgment - see explanation 125 S.W.2d 270). Independent school districts are governed generally in matters of taxation by the group of statutes applicable to cities and towns rather than by the statutes applicable to the State and counties. Republic Ins. Co. v. Hyde Park Independent School District, 141 Tex. 224, 171 S.W.2d 342 (1943). It is thus apparent that the statutes contain express directions for assessing and collecting school district taxes and that no express statutory provision authorizes a contract of the type under consideration. Therefore, if the Board of Trustees was authorized to enter into this contract, such authorization must be implied from the provision in Article 2827, Section 2, previously quoted, which authorizes the expenditure of local school funds for "purposes necessary in the conduct of the public schools;" and the question is whether such authority can be implied in view of the specific statutory provisions above cited or summarized.

Contracts similar to the one under consideration have become the subject of litigation in our courts.

In Roper v. Hall, 280 S.W. 289 (Tex. Civ. App. 1926), the court held that the Commissioners' Court of Freestone County had authority to make a contract with a private individual to list owners of all producing oil and gas properties within the county and make a valuation of all pipe lines, refineries, tank farms, and tankage, etc., used in connection with oil and gas development, including transportation facilities. The court reasoned that the particular property involved could not have been assessed by an ordinary person, and therefore the Commissioners' Court under its general powers had the authority to secure expert assistance. The contention that duties imposed by law on the Tax Collector and Commissioners' Court had been unlawfully delegated was rejected. The court said:

> "It does not appear that it was the intent or effect of the contract that Pickett should perform the duties imposed by law on any of the offices concerned. On the contrary it does appear that its purpose was merely to aid such offices in the respective performance of their duties."

In Simkins v. City of Corsicana, 86 S.W.2d 792 (Tex. Civ. App. 1935), suit was brought by the City of Corsicana against Mrs. Eliza J. Simkins to recover delinquent taxes for the years 1921 to 1929, inclusive, and to foreclose a tax lien on the land against which the taxes had been assessed. The defendant alleged

that in 1928 the city had entered into a contract with one Erinborg under which he was to place a value for tax purposes on all real property within the city; that defendant's property had been excessively valued by said Erinborg; that the city had arbitrarily and without hearing adopted said valuation over defendant's protest, that said action was illegal and void, and that therefore the city had no right to collect the taxes. The court held that the trial court had erred in not submitting to the jury the question of whether the valuation as fixed by the board was grossly excessive and reversed and remanded the case. In the course of the opinion the court, speaking through Judge Alexander, said:

> "We know of no valid reason why a tax board cannot employ an expert to assist it in arriving at the true value of taxable property, and when such expert has been employed the board should have a right to take into consideration the information so furnished by him in ascertaining the true value of property for tax purposes. . . . But it must be remembered that such experts so employed bear no official relationship to the property owner and have no statutory authority to fix the value at which the property is to be assessed . . ."
> (p. 794)

In Marquart v. Harris County, 117 S.W.2d 494 (Tex. Civ. App. 1938, error dism.), a contract which contemplated a revaluation by two firms of all the property within Harris County "of the type now generally assessed for taxation" was held to be void. The court first stated that the contract as a whole showed that it was made by the Commissioners' Court "in connection with the collection of delinquent taxes" within the meaning of Articles 7264a and 7335a and that since it had not been approved by either the Comptroller or Attorney General, nor by both acting together, was prohibited by these statutes.

It has been held that a contract made by an independent school district with an attorney for collection of delinquent taxes did not have to be approved by the Attorney General and the Comptroller, although the amount of the fee for such services was limited to that provided by law for State and county taxes. Bell v. Mansfield Independent School District, 133 Tex. 403, 129 S.W.2d 629 (1939). Therefore, the first reason for invalidating the contract in the Marquart case is not applicable here even if we were of the opinion that the contract under consideration was in the nature of a contract "in connection with the collection of delinquent taxes," a point which we do not need to decide.

However, the court found the contract void for the further reason that it amounted to an attempted delegation of the duties

devolved by law upon the tax assessor and collector. We quote from the opinion of the court at pages 502, 503:

"(4) (5) While the Commissioners' Court may validly employ 'skilled experts' to value for taxation purposes property in special instances, where technical equipment is required, since this contract--by its express terms--embraces a valuation of the entire taxable property of Harris County, as reflected by its tax records, it necessarily supersedes the powers, duties, and functions of the tax assessor and collector, and since those duties are devolved by law upon him, such an attempted employment by that body of other persons to, in the first instance, perform such duties instead, is an expenditure of public funds for an unauthorized purpose. Article 5, sec. 18, State Constitution; Sec. 18 and Sec. 14, as amended November 8, 1932, of Art. 8, State Constitution; Sections 6 and 10 of Art. 16, State Constitution; Section 3 of Art. 1, State Constitution; Art. 3, Secs. 44, 53, and 55 of State Constitution; Articles 7148, 7161, 7162, 7183, 7184 to 7205, inclusive, all of the Revised Civil Statutes of 1925; Missouri, K. & T. Ry. Co. v. Shannon, 100 Tex. 379, 100 S.W. 138, 10 L.R.A.N.S., 681; Maud v. Terrell, 109 Tex. 97, 200 S.W. 375, Von Rosenberg v. Lovett, Tex. Civ. App., 173 S.W. 508; Roper v. Hall, Tex. Civ. App., 280 S.W. 289; Federal Royalty Co. v. State, Tex. Civ. App., 42 S.W.2d 670; Id., 124 Tex. 290, 77 S.W.2d 1021, 80 S.W. 2d 741.

"(5) No extended discussion will be indulged in under this last-stated ground. Suffice it to say that such an apparent undertaking of a commissioners' court to itself initially revalue the entire taxable property of a county, under the guise of using the same for its own information and guidance when sitting as a Board of Equalization, does not seem to this court to square with the balanced system of relative powers and duties conferred upon that body by our laws, as comparable to the correlative ones conferred upon the county tax assessor-collector; it may be, as much testimony in the statement of facts indicates, that in this instance the commissioners' court concluded that the tax assessor-collector's office had broken down, and that its so occupying his place and performing his functions instead, justified an original assumption of such power upon its part; but it is not this court's understanding that our statutes in such cases conferred upon it any such authority; on the contrary, it would seem to have been the tax

assessor-collector's legal right to independently per-
form the duties actually conferred upon him by law.
Terrell v. Greene, 88 Tex. 539, 31 S.W. 631, 634; 34
Tex. Jur. p. 444.

"(6) The authorities cited under ground (5) supra
seem to make it quite clear that this contract did evi-
dence an undertaking to in effect usurp the official priv-
ileges and obligations of the tax assessor-collector, as
vouchsafed in the statutes there collated, while upon the
other hand, the differing and correlative duties of the
commissioners' court--as a Board of Equalization--
are embraced within R.S. Articles 7206, 7211, and 7212.
Under them it would seem never to have been contem-
plated that the Board of Equalization should act upon
anything other than the assessments first rendered to
them by the tax assessor-collector, and not initially up-
on their own motion. County of Galveston v. Galveston
Gas Co., 72 Tex. 509, 10 S.W. 583. Further, under R.S.
Article 7217--after the assessor-collector had discharged
his duties under those preceding statutes and had fur-
nished the lists therein called for to that Board--it is ob-
ligated to return the same to him for presentment to the
Grand Jury of his county."

In Aldrich v. Dallas County, 167 S.W.2d 560 (Tex. Civ.
App. 1942, error dism.), the court stated at page 565 that they per-
ceived no material difference between the contract there under con-
sideration and the one involved in the Marquart case and that the
contract was therefore invalid.

Neither the Marquart case nor the Aldrich case refers
to Simkins v. City of Corsicana, supra. We think that the decisions
in these two cases conflict with the language used by Judge Alexan-
der in the City of Corsicana case. No writ was applied for in the
City of Corsicana case. In view of the fact that applications for
writs of error were refused in the Marquart and Aldrich cases, we
are of the opinion that we must be guided by these decisions.

The contract made by Grand Prairie Independent School
District varies, of course, from the contracts considered in these
two cases, but we think in view of these decisions it would be clear-
ly outside the powers of a commissioners' court.

As we have previously stated, school districts are gov-
erned generally in matters of taxation by a different group of stat-
utes than are counties, i.e., by those provided for cities, towns and
villages. It is true that these statutes are less numerous and less
specific than those which apply to the State and counties; but they

none the less clearly contemplate that the assessor and collector shall make up the assessment rolls of all property taxed, Art. 1044, V.C.S.; and that he shall make out a list of all property which has not been given in for assessment and assess same in the name of the owner if known, etc., and shall present same to the board of equalization for valuation by the board. Arts. 1045, 1046, V.C.S. Further specific duties are set out in Articles 1047, 1050, 1052, 1055, and 1057, V.C.S. For an excellent summary of the assessor's powers, see Blewett v. Richardson Independent School Dist., 240 S.W. 529, 532, 533 (Tex. Civ. App. 1922).

We think that the contract with the Service Company was, for practical purposes, a contract to list and revalue all the taxed property within the district. (The only property excepted from its terms was personal property in homes, automobiles, jewelry, stocks and bonds and intangible property.) We are of the opinion that in view of the specific statutes providing for the manner of listing and valuing property there is no room for finding implied authority in the Board of Trustees to contract for the performance of these duties, and the contract is therefore void.

## SUMMARY

The Board of Trustees of Grand Prairie Independent School District had no authority to enter into a property listing and valuation contract which provided for the performance of duties devolved by law upon the District's Tax Assessor and Collector, and said contract is therefore void. Cf. Marquart v. Harris County, 117 S.W.2d 494 (Tex. Civ. App. 1938, error dism.); Aldrich v. Dallas County, 167 S.W.2d 560 (Tex. Civ. App. 1942, error dism.).

Yours very truly

APPROVED

*[signature]*

FIRST ASSISTANT
ATTORNEY GENERAL

ATTORNEY GENERAL OF TEXAS

By *[signature]*

Mrs. Marietta McGregor Creel
Assistant

MMC/mwb